**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 06-80 (WOB)**

**SHEILA COUCH**                                                              **PLAINTIFF**

**VS.**                                    <u>**OPINION and ORDER**</u>

**CONTINENTAL CASUALTY COMPANY**                               **DEFENDANT**


This matter is before the court on the motion of the
plaintiff for attorney fees (Doc. 33), and the motion of the
defendant for leave to file a sur-reply (Doc. 37).  The court has
considered the defendant's sur-reply and its motion for leave
shall be granted.

On September 18, 2007, this court granted summary judgment
for the plaintiff finding that it was not reasonable for the
defendant to conclude from the medical records that the plaintiff
was able to perform a full-time sedentary occupation[1].
Accordingly, the court found the defendant's decision to
terminate benefits was arbitrary and capricious and the plaintiff
was entitled to benefits. The plaintiff now seeks an award of
attorney fees.

In an ERISA action, a district court may, in its discretion,
award a reasonable attorney fee and costs to either party.  29
U.S.C. § 1132(g)(1).  There is no presumption, however, that
attorney fees will be awarded.  *Moon v. Unum Provident Corp*, 461

---

[1]In its opinion of September 18, 2007, the court set forth
in detail the facts of this case and will not recite them here.

F.3d 639, 643 (6th Cir. 2006).

The Sixth Circuit has articulated the following five-factor test for determining whether an award of attorney fees is appropriate under ERISA: 1) the degree of the opposing party's culpability or bad faith; 2) the opposing party's ability to satisfy an award; 3) the deterrent effect of an award on other persons under similar circumstances; 4) whether the party requesting the fee sought to confer a common benefit on all participants or resolve a significant legal question regarding ERISA; and 5) the relative merits of the parties' positions. *Id*. at 642 (citing *Secretary of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985))(known as the "*King* factors").  No one factor is determinative. *Id*.  Instead, the district court must consider each factor before exercising its discretion, but the factors are not dispositive. *Id*. at 643 (citing *Schwartz v. Gregori*, 160 F.3d 1116, 1119 (6th Cir. 1998)).

An analysis of the factors to the facts of this case leads to a finding that an award of attorney fees is appropriate.

**1.  Degree of Opposing Party's Culpability or Bad Faith**.

In this case, the court found that the defendant was arbitrary and capricious in denying benefits under the "any occupation" standard because it mischaracterized physicians' statements, failed to consider the total effect that the combination of all plaintiff's impairments had on her ability to function, and specifically sought to limit medical assessments to specific impairments.  The mere fact that this court found the

defendant's decision to be arbitrary and capricious, however, does not necessarily indicate culpability or bad faith.  *Gard v. Blankenburg*, 33 Fed. Appx. 722, 732 (6th Cir. 2002).

In explaining the reason behind its decision to terminate the plaintiff's benefits, the defendant stated:

> According to your physician, Dr. Thomas, on 2/03/2005 you are able to perform sedentary work.  Previously, on 11/08/2002, Dr. John Kelly, pain management, provided the following permanent restrictions for your cervical condition: no overhead use of arms, no lifting or carrying over 10 pounds, no pushing or pulling over 15 pounds, and no bending or twisting of neck more than five times per hour.

(AR-LTD-80).

Dr. Thomas's assessment of February 3, 2005, however, was specifically limited by the defendant to plaintiff's limitations as a result of her kidney transplant.  In fact, a close review of this assessment indicates that Doctor Thomas did not think the plaintiff was capable of returning to full-time sedentary work based upon the effects of all of her impairments because he first checked "no" in response to the question "[i]s your patient currently able to perform full-time work that involves primarily sedentary activity with the option to stand as needed and lifting up to 10 lbs.  (AR-LTD-532).  He then circled a portion of the instructions that stated that the doctor should answer the question "based only on the kidney transplant done on 3-30-03," scratched out the previously checked "no" box and drew an arrow to the checked "yes" box.  Accordingly, this assessment provides some evidence that Dr. Thomas concurred with Dr. Cardi and thought that the plaintiff was precluded from full-time sedentary

work as a result of the effects of all of her impairments.

The defendant also relied upon Dr. Kelly's 2002 assessment that identified permanent restrictions for the plaintiff as supporting its finding that she could perform sedentary work on a full-time basis.  At the time the defendant requested this assessment, it was determining whether the plaintiff could perform her own medium-level occupation.  The doctor confirmed that she could not:  Dr. Kelly responded "no" to the defendant's specific question as to whether the plaintiff could perform full-time at a medium level and stated that he did not believe she could ever return to this level of functioning.  (AR-LTD-622).

The defendant, more than three years later, refers to this assessment as evidence that the plaintiff can perform at a sedentary level.  A closer look at this assessment, however, illustrates that although Doctor Kelly provided permanent restrictions that limit the plaintiff to a range of sedentary work, he did not opine that the plaintiff had the capacity to work full-time.  In fact, he stated: "[the plaintiff] has completed all reasonable and appropriate medical treatment, including surgery, and has unfortunately been left with chronic neck and upper back pain which did not respond to treatment."  In addition, this assessment was performed prior to plaintiff's kidney transplant, further exacerbation of her degenerative disk disease, and the onset of DVT.

The defendant's reliance on Dr. Best's statement in 2001, one to two months after injury, limiting the plaintiff to only

4

sedentary work, is also not well taken.  It is clear that, at the time Dr. Best restricted the plaintiff to sedentary work, he was attempting to ascertain the seriousness of her injury.  In addition, a few weeks after limiting the plaintiff to sedentary work for 7-8 hours, he stated that she was in extreme pain and could not complete the physical exam due to her pain.  Dr. Best also noted that the epidural block did not provide the plaintiff with any relief and he noted that surgery may be needed.  (AR-LTD-200-205).  On May 17, 2001, Dr. Best completed an updated restriction, circling that plaintiff was limited to sitting/sedentary activity, but did not identify how long she could perform at this level.  He also did not specifically recommend that the plaintiff return to work at a sedentary level as he had previously stated.  Instead, he noted that she was to see a neurosurgeon.

The record does not suggest that Dr. Best treated the plaintiff after she was referred to the neurosurgeon.  Dr. Best's recommendations were based upon early evaluations of plaintiff's injury and prior to complete diagnostic imaging.  As the complexity of the plaintiff's impairments became evident, Dr. Best referred the plaintiff to someone better able to serve her needs.  Thus, Dr. Best's early assessments do not provide a reasoned explanation for the defendant finding that the plaintiff can perform sedentary work on a full-time basis.

This court held that:

> [n]ot only did defendant mischaracterize these doctors's assessments, but it failed to consider the total effect that

5

the combination of all of plaintiff's impairments had on her
ability to function.  The defendant sought to specifically
limit the assessments to specific impairments.  In fact, the
defendant rejected Dr. Cardi's December 2004 assessment in
which he opined that the plaintiff could not engage in
sedentary work based upon all of her impairments and her use
of Coumadin because Dr. Cardi treated the plaintiff for only
her kidney transplant.  (AR-LTD-546).  The defendant did
not, however, attempt to obtain an updated assessment from
any of the plaintiff's other physicians, request the
plaintiff undergo a physical evaluation, or take into
consideration the effect plaintiff's medication had on her
ability to function.

The defendant argues that, since the court did not find it

had acted in bad faith or with as much culpability as the

defendant in *Moon*, this factor should be weighed in its favor.

Although the defendant is correct that this court did not find

that it acted in bad faith, the court did find that the defendant

engaged in culpable conduct in not considering the totality of

the claimant's impairments and in specifically attempting to

limit the opinion evidence to individual impairments.  Therefore,

this factor weighs against the defendant.

###    2.    Opposing Party's Ability to Satisfy an Award of Attorney Fees.

As the Sixth Circuit noted in *Moon*, this factor favors the

plaintiff because the defendant, a large insurance company, can

clearly satisfy an award of attorney fees.

###    3. Deterrent Effect of Award on Other Persons Under Similar Circumstances.

The Sixth Circuit stated in *Moon* that the facts of that case

were not so unique that it would not serve any deterrence value

to other administrators in similar circumstances.  *Moon*, 461 F.3d

at 645.  Although not a published Sixth Circuit case, the same

can be said about the case at bar.

Here, this court articulated in its opinion that the defendant erred in denying benefits by looking at the plaintiff's impairments in isolation and attempting to limit medical assessments to only the effects of a specific impairment. Thus, this case, like *Moon*, should deter other insurers from making the same arbitrary decisions made by the defendant and provide incentive for administrators to consider the total effect a plaintiff's impairments have on her ability to perform.

The defendant argues, citing *Maurer v. Joy Tech.*, Inc., 212 F.3d 907, 919 (6th Cir. 2000), that this case would not serve as a deterrent to other insurers because it did not act with bad faith. As discussed above, however, the defendant's intentional attempt to limit its review of plaintiff's continuing eligibility by looking at her impairments individually, instead of cumulatively, and in mischaracterizing the medical opinions is sufficient culpability for an award of fees to act as a deterrent to other insurers in similar circumstances. Therefore, this factor also weighs in plaintiff's favor.

### 4. Conferring a Common Benefit on all ERISA Plan Beneficiaries.

The plaintiff concedes that she did not seek to confer a common benefit on all plan participants, but sought benefits for herself. Thus, this factor weighs in the defendant's favor.

### 5. Relative Merit of the Parties' Positions.

As explained above, under factor one, the defendant's

decision in this case was made in a culpable manner in its
failure to consider the total effect all of the plaintiff's
impairments had on her ability to function.  The defendant
rejected opinion evidence that found the plaintiff could not
perform full-time at any level because of the total effect of her
impairments, and it specifically instructed the physician to
limit his analysis to only one impairment.  Yet, the defendant
never sought an assessment that analyzed the total effect all of
plaintiff's impairments had on her ability to work.  As this
court found in its September 18, 2007 opinion, the plaintiff's
position in this case is stronger than that of the defendant.
Thus, this factor also weighs in plaintiff's favor.

     Four of the five factors weigh in plaintiff's favor.  Thus,
the court finds an award of attorney fees is appropriate in this
matter.

     Having found that an award of attorney fees is appropriate
in this case, the court now turns to a determination of the
proper amount to award.  The plaintiff submitted her counsel's
time sheet as evidence that she should be awarded $11,410.00 in
attorney fees, which represents 65.2 hours of work at $175 per
hour.  The time sheet includes time her counsel spent pursuing
this matter during the administrative proceedings as well as time
spent discussing settlement.

     The defendant correctly notes that the Sixth Circuit has
recognized that "ERISA does not permit parties to recover
attorneys' fees for legal work performed during the

8

administrative phase of a benefits proceeding."  *Anderson v. Procter & Gamble Co.*, 220 F.3d 449, 456 (6th Cir. 2000).  Thus, the 14.8 hours billed from October 3, 2005 to January 19, 2006, relating to the administrative action will not be included in an award.

The defendant also argues that the court should not award the plaintiff the attorney fees she incurred during settlement negotiations because such an award would serve as a disincentive for defendants to engage in settlement discussion in the future. The plaintiff did not respond to the defendant's argument.

The defendant does not cite any case, nor did this court's research discover one, that discusses whether attorney fees incurred during settlement discussions, which were ultimately unsuccessful, should be included in an award of attorney fees under ERISA.  *But See Mogck v. Unum Life Ins. Co. of America*, 289 F. Supp. 2d 1181, 1191 (S.D. Cal. 2003) (award included time spent preparing for settlement conferences with court).

This court finds that settlement discussions are an ordinary part of the litigation process.  Thus, the court holds that awarding attorney fees incurred as a result of reasonable settlement efforts is proper under 29 U.S.C. § 1132(g)(1).

Here, there is no evidence that the plaintiff unduly prolonged settlement negotiations or that she negotiated in bad faith.  Accordingly, the court will include the fees incurred during settlement discussions in its award of attorney fees.

Therefore, the court being sufficiently advised,

**IT IS ORDERED** as follows:

1.   That the defendant's motion to file a sur-reply (Doc. #37) be, and it is, hereby **GRANTED**; and

2.   That the plaintiff's motion for attorney fees (Doc. #33) be, and it is, hereby **GRANTED** to the extent that counsel for the plaintiff is awarded attorney fees of $8,820, a rate of $175 per

hour for 50.4 hours of service provided on plaintiff's behalf in this action.  Claimant is further awarded costs in the amount of $254.88.

This 11th day of January 2008.



Signed By:

_William O. Bertelsman_   WOB

**United States District Judge**